**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION**

**CASE NO.:**

SKYJET ELITE, CORP., a
Florida corporation,

        Plaintiff,

vs.

LU INVESTMENTS, INC., a Delaware
corporation, AIRCRAFT GUARANTY
CORPORATION, TRUSTEE a Wyoming corporation,
and LIM UNG, individually,

        Defendants.

_____/

**COMPLAINT**
DEMAND FOR JURY TRIAL

SKYJET ELITE, CORP. a Florida corporation ("Plaintiff" or "SKYJET ELITE")

sues LU INVESTMENTS, INC, a Delaware corporation ("LU INVESTMENTS"),

AIRCRAFT GUARANTY CORPORATION, a Delaware corporation ("AGC"), and LIM

UNG, individually, a resident of the country of Australia ("UNG"), and alleges:

**INTRODUCTION**

1.     SKYJET ELITE is a certificated 14 C.F.R. Part 135 on-demand air carrier

that provides aircraft charter services to the general public for compensation or hire.

2.     One method in which an air carrier such as SKYJET ELITE acquires

aircraft to provide air transportation to the general public is through a Dry-Lease with an

aircraft owner. A Dry Lease transfers possession of the aircraft without transferring the

title. While the Dry Lease furnishes the aircraft, the lessor/aircraft owner provides no

crew.

2.      Pursuant to a Dry Lease, the charter operator has operation control of the aircraft. *See* 14 C.F.R. § 1.1 Definitions that states: *Operational control,* with respect to a flight, means the exercise of authority over initiating, conducting or terminating a flight.

3.      An aircraft "Management Agreement" is more often really a Dry Lease that mirrors the same principles as a Dry Lease where operational control of the aircraft is given to the management entity.

4.      Pursuant to 49 U.S.C. § 44101, an aircraft cannot be operated unless it is registered. Regardless of how one intends to operate an aircraft, there are stringent limitations on foreign ownership of U.S. registered aircraft.

5.      49 U.S.C. § 44102 provides that an aircraft is eligible for United States registration only if it is owned by (a) a citizen of the United States, (b) an individual citizen of a foreign country lawfully admitted for permanent residence in the United States, (c) a corporation (not a U.S. citizen) lawfully organized under the laws of the United States or any State thereof as long as the aircraft is based and primarily used in the United States, or (d) a governmental unit, and it is not registered under the laws of any foreign county. *See* 18 U.S.C. § 1001.[1]

---

[1] 18 U.S.C. § 1001:

**(a)** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

    **(1)** falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

    **(2)** makes any materially false, fictitious, or fraudulent statement or representation; or

    **(3)** makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years…..

-2-

6.      14 C.F.R. § 47.2 defines "U.S. Citizen" as:

(1) An individual who is a citizen of the United States or one of its possessions;

(2) A partnership of which each member is such an individual; and

(3) A corporation or association created or organized under the laws of the United States or of any State, Territory, or possession of the United States, of which the president and two-thirds or more of the board of directors and other managing officers thereof are such individuals and in which at least 75 percent of the voting interest is owned or controlled by persons who are citizens of the United States or of one of its possessions.

7.      49 U.S.C. § 44102 does not specifically address owner trustees, however 14 C.F.R. § 47.7 expands and amplifies on the authority found in 49 U.S.C. § 44102. 14 C.F.R. §47.7(a) declares that with respect to U.S. citizens, an applicant for aircraft registration who is a citizen must make a certification to that effect on FAA Form 8050-1. Then, 14 C.F.R. § 47.7(b) requires that with respect to resident aliens, the applicant for registration "must furnish a representation of permanent residence and the applicant's alien registration number issued by the Immigration and Naturalization Service." So, if the aircraft is going to be registered by a trustee, then the applicant owner must be a

-3-

United States citizen under 14 C.F.R. § 47.7(a) or a resident alien under 14 C.F.R. § 47.7(b).

8.     14 C.F.R. § 47.7(c) provides: Trustees. An applicant for aircraft registration under 49 U.S.C. § 44102 that holds legal title to an aircraft in trust must comply with the following requirements:

(1) Each trustee must be either a U.S. citizen or resident alien.

(2) The applicant must submit with the aircraft registration application:

    i.   A copy of each document legally effecting a relationship under the trust;

    ii.  If each beneficiary under the trust, including each person whose security interest in the aircraft is incorporated in the trust, is either a U.S. citizen or a resident alien, an affidavit by the applicant to that effect; and

    iii. If any beneficiary under the trust, including any person whose security interest is incorporated in the trust, is not a U.S. citizen or resident alien, an affidavit from each trustee stating that the trustee is not aware of any reason, situation, or relationship (involving beneficiaries or the persons who are not U.S. citizens or resident aliens) as a result of which those persons together would have more than 25% of the aggregate power to influence limit the exercise of the trustee's authority.

-4-

(3) If persons who are neither U.S. citizens nor resident aliens have the power to direct or remove a trustee, either directly or indirectly through the control of another person, the trust instrument must provide that those persons together may not have more than 25% of the aggregate power to direct or remove a trustee.

9.      Therefore, pursuant to 14 C.F.R. § 47.7(c), (1) the trustee must be a citizen or resident alien, (2) a copy of the trust agreement must be submitted to the FAA, (3) if the beneficiary under the trust is a U.S. citizen or resident alien, there must be an affidavit to that effect, *(4) if the beneficiary under the trust (including any person with a security interest in the aircraft) is not a U.S. citizen or resident alien, then there must be an affidavit from each trustee stating the trustee is not aware of any reason as a result of which non U.S. citizens will have more than 25% of the aggregate power to influence or limit the exercise of the trustee's authority, and (5) if persons who are not U.S. citizens or resident aliens have the power to direct or remove a trustee, either directly or indirectly, the trust must provide that those persons may not have more than 25% of the aggregate power to direct or remove a trustee, provided that does not prevent foreign nationals from having more than 25% of the beneficial interest in the trust.* [Emphasis Added]

10.     14 C.F.R. § 47.43(a)(4) provides: (a) The registration of an aircraft is invalid if, at the time it is made: (4) The interest of the applicant in the aircraft was created by a transaction that was not entered into in good faith, but rather made to avoid

-5-

(with or without the owner's knowledge) compliance with Section 501 of the Federal Aviation Act of 1968 (49 USC §1401)

11.     SKYJET ELITE'S claim is predicated on the ownership rights, and contractual relationship regarding a 1998 Raytheon Aircraft Beechjet Model 400A with the Federal Aviation Administration's ("FAA") registration number: N814SG, bearing serial number: RK-188 with its two (2) Pratt and Whitney Engines respectfully bearing engine serial numbers PCE-JA0362 and PCE-JA0144, including all fixtures, furnishings, parts, components, radios, navigational devices and systems as well as all log books, maintenance and other records of every kind thereto (hereinafter collectively referred to as the "Aircraft").

12.     As stated in the records of the FAA, at the time of initiation of the Management Agreement for this Aircraft, the Aircraft was owned under a Trust Arrangement as referenced in ¶ 9 above by AGC.

13.     On or about July 22, 2019 AGC filed an FAA Form 8050-1 Aircraft Registration to take title to the Aircraft pursuant to a Trust Agreement, Continent Aircraft Statutory Trust No.: 3077 with Pelican Securities Limited (UNG) dated July 9, 2019 and filed with the FAA on July 22, 2019 whereby AGC would have ownership and control of the Aircraft - not UNG.

14.     Pursuant to a Voting Trust, on May 27, 2021, LU INVESTMENTS recorded with the FAA, an 8050-1 Application for Aircraft Registration that was

-6-

recorded by the FAA on August 16, 2021 – thereafter claiming it is previously the beneficial owner of the Aircraft, and is now the real party in interest of the Aircraft.

## THE PARTIES

15.     SKYJET ELITE is a corporation organized under the laws of the state of Florida with a principal place of business located at 1100 Lee Wagener Blvd, , Suite 323, Ft. Lauderdale, FL 33315.  It is deemed a citizen of Florida for purposes of 28 U.S.C. § 1332(c).

16.     AIRCRAFT GUARANTY CORPORATION is a corporation organized under the laws of the state of Wyoming with a principal place of business located at 928 SW 107th St, Oklahoma City, OK 73170. It is deemed a citizen of Wyoming and/or Oklahoma for purposes of 28 U.S.C. § 1332(c).

17.     LU INVESTMENTS is a corporation organized under the laws of the state of Delaware with a principal place of business located at 251 Little Falls Drive, Wilmington, Delaware 19808.  It is deemed a citizen of Delaware for purposes of 28 U.S.C. § 1332(c).

18.     LIM UNG, an individual, is a resident of the country of Australia residing at 421 Victoria Street. 3056 Brunswick, Melbourne, Australia.

## JURISDICTION AND VENUE

19.     The amount in controversy, exclusive of interest and costs exceeds $75,000.00.

MARK A SCHNEIDER, P.A.
1100 LEE WAGENER BLVD. SUITE 321 FT LAUDERDALE, FL 33315  (954) 661-6275

20.     The court has jurisdiction pursuant to 28 U.S.C. § 1332(a) based upon diversity of citizenship between Plaintiff and Defendants.

21.     Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2).

22.     All conditions precedent for bringing this action have been fully performed, waived, or excused.

## **FACTUAL ALLEGATIONS**

23.     In April 2020, Paul Hudik, the then 100% owner of SKYJET ELITE began courting Daniel Perez, and Alfredo Diez as potential buyer of 100% of the stock interest in SKYJET ELITE.

24.     At no time during the due diligence process with Mr. Perez and Mr. Diez did Paul Hudik disclose that he was in discussions with UNG and UNG'S boat captain, Ian Roberts (based in Barcelona, Spain) to add the Aircraft onto SKYJET ELITE'S charter certificate.

25.     On or about July 1, 2020 in direct violation of U.S. Federal law, UNG executed a Management Agreement with SKYJET ELITE whereby UNG represented himself as the owner of the Aircraft.  He further represented himself entitled to execute the Management Agreement as the "Managing Member" on behalf of the Trust – in direct violation of the Trust Agreement. *See* attached Exhibit 2.

26.     The closing on the sale of 100% of SKYJET ELITE to Atlantis Express, LLC, a Florida Limited Liability Company, took place in early August 2020.  At no time

-8-

prior to the closing did Paul Hudik, or UNG disclose that the Aircraft was under a Management Agreement, executed by UNG thereby hiding the terms and conditions.

27.     As a charter operator, SKYJET ELITE is governed by the provisions of 14 C.F.R Part 135 and 119 et. seq. whereby the operators' written requirements are contained in the FAA approved General Operations manual ("GOM"). Within the GOM are requirements setting forth how an aircraft is conformed to a certain level of maintenance and other safety standards in order to transport the general public for compensation or hire.

28.     In August 2020, Paul Hudik provided the certificate's Principal Operations Inspector of the FAA with a copy of the Management Agreement with a request to add the Aircraft onto SKYJET ELITE'S charter certificate.

29.     Both prior to and subsequent to the closing, Paul Hudik served as the Chief Pilot pursuant to 14 C.F.R. 119.71.

30.     Based upon Paul Hudik's prior relationship with the FAA, both he and UNG could hide the relationship and the Management Agreement from the new owners.

31.     In September 2020, a month after the closing on the sale to the new owners Paul Hudik finally disclosed that he and UNG had entered into a Management Agreement to add the Aircraft to SKYJET ELITE'S charter certificate.

32.     The new owners of SKYJET ELITE requested on numerous occasions from Paul Hudik a copy of the Management Agreement and the contact information on

MARK A SCHNEIDER, P.A.
1100 LEE WAGENER BLVD. SUITE 321 FT LAUDERDALE, FL 33315  (954) 661-6275

the owner of the Aircraft but were rebuffed on numerous occasions stating the "Owner" only wanted to deal through himself"

33.     From October – December 31, 2020, SKYJET ELITE, pursuant to the mandatory requirements of its GOM provided certain labor, material or services on the Aircraft at its expense.  Paul Hudik and UGH knew that SKYJET ELITE was entitled to reimbursement of these costs and expenses for which Paul Hudik and UGH refused to disclose in order to avoid paying.

34.     In late November 2020 demand was made upon Mr. Hudik to provide the contact information of UNG and advise him that he owes SKYJET ELITE a significant sum for expenses paid.

35.     When the information was finally provided, SKYJET ELITE contacted UGH immediately.

36.     UGH directed SKYJET ELITE to deal directly with Paul Hudik and Ian Roberts.

37.     When SKYJEY ELITE finally received a copy of the Management Agreement, it confirmed that it was entitled to the reimbursement of these expenses, plus deposits that were never paid.

38.     When SKYJET ELITE found out that Paul Hudik had engaged in certain forms of deception of both funds and the operation of the company, he was immediately terminated.

-10-

39.     Subsequent to reviewing the Management Agreement, since UGH refused to discuss the issue of payment to the owners of SKYJET ELITE, following UGH'S directive, the owners of SKYJET ELITE contacted Ian Roberts, the agent acting on behalf of UGH.

40.     From December 31, 2020 through the date of filing this action, pursuant to the mandatory requirements of its GOM and the Management Agreement, SKYJET ELITE continued to provide certain labor, material or services on the Aircraft at its expense.

41.     In February 2021, Ian Roberts requested an accounting of all expenses and made numerous comments for SKYJET ELITE to "no worry", that UGH would pay for the services, and for SKYJET ELITE to continue operating the Aircraft to try to reduce the debt.

42.     In February 2021, although Ian Robert continued to represent as the acting agent for UGH that payment would be forthcoming, but it never did.

43.     On March 23, 2021, SKYJET ELITE filed its Claim of Lien in the amount of $106,639.62 recorded in Instr. 117121897 of the Official Record Books of Broward County.

44.     In addition, SKYJET ELITE recorded it Claim of Lien with the FAA by Conveyance LE014836 dated April 28, 2021.

45.     On December 18, 2020, Deborah Lynn Mercer-Erwin, the President of AGC, and the owner of N814SG was arrested.  The indictment alleged drug charges,

-11-

money laundering, export violations, and aircraft registration violations. AGC was the Trustee/Owner of the Aircraft.

46.    On or about May 27, 2021, AGC signed a 8050-2 Bill of Sale on the Aircraft transferring title from AGC to Mr. Lim Ung – pursuant to a Voting Trust. The validity of this sale is unknown. Based on this Bill of Sale, LU INVESTMENTS, INC. or UNG took over the Management Contract from AGC.

47.    SKYJET ELITE has made numerous demands upon Defendants, and as of the filing of this complaint, the Defendants have refused to pay the sum due and owed.

### COUNT I

LIEN FORECLOSURE ACTION
LU INVESTMENTS, INC.
Aircraft Tail Number N814SG

48.    SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

49.    This is an action to foreclose liens upon aircraft for labor, material or services to the Aircraft pursuant to Fla. Stat. § 329.51 and Fla. Stat. § 713.58.

50.    Pursuant to Fla. Stat. §. § 329.51, SKYJET ELITE has a fully enforceable perfected Aircraft Claim of Lien upon the Aircraft, superior to all other right, claim or interest or title of the owner, or other party by, through or under them.

51.    SKYJET ELITE has filed and recorded its Claims of Liens as follows:

N814SG FAA:      Conveyance No.: LE014836
FLORIDA:         Instr. 117141897 – Broward County
Amount:          $106,639.52

-12-

52.     The right, title, and interest of any other person or entity, if any, to Aircraft encumbered by SKYJET ELITE is inferior to its liens.

53.     Pursuant to Fla. Stat. § 329.51, SKYJET ELITE has perfected statutory liens upon the Aircraft superior to all right, claim, interest or title of any other party.

54.     SKYJET ELITE has and is entitled to enforce its Claims of Lien under the Lien Law for all sums remaining owing by LU INVESTMENTS**.**

55.     By reason of the foregoing, SKYJET ELITE required to employ its attorneys to attempt to effect collection of the indebtedness due SKYJET ELITE under the terms of its Management Agreement, to represent it to institute and prosecute this foreclosure action, and for such employment SKYJET ELITE has agreed and become obligated to pay them a reasonable fee.  SKYJET ELITE is entitled to a 15% attorney's fee in accordance with the provisions of Fla. Stat. § 85.011.

56.     This action has been timely filed within one year of the recording of SKYJET ELITE's recording of  its Aircraft Claims of Lien.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.     That this Court takes jurisdiction of the subject matter and the parties hereto;

B.     That an accounting be taken of all sums due SKYJET ELITE for the unpaid labor, material or services, interest, costs, and attorney's fees which have been incurred or which will be incurred by SKYJET ELITE during the pendency of this suit, and that all sums found to be due to

-13-

SKYJET ELITE be decreed to be due and owing to SKYJET ELITE and to be a lien in favor of SKYJET ELITE upon the respective aforesaid Aircraft, prior, paramount, and superior to all rights, title, interests, and claims of any party;

C.     That SKYJET ELITE be entitled to take immediate possession of the aforesaid Aircraft, including their respective engine and airframe maintenance, operation and flight logs;

D.     That this Court decree that in default of the payments of all sums found to be due to SKYJET ELITE within the time set by this Court, that the Aircraft, including their respective engine and airframe maintenance, operation and flight logs, be sold at public or private sale, as provided by law, and by and under the direction of this Court and that there be paid out of the proceeds of said sale the costs and expenses of this suit, including SKYJET ELITE'S attorney's fees, and that the remainder of said proceeds be applied to payment of the unpaid fuel charges and interest found to be due to SKYJET ELITE;

E.     That this Court further decree that upon sale being made, all parties to this action and all parties claiming by, through or under said defendants since the filing of the Claims of Lien in Broward, Florida be forever barred and foreclosed of any right, title, interest and lien in, to or upon the aforesaid Aircraft, including their respective engine and airframe

-14-

maintenance, operation and flight logs, that all parties in possession thereof surrender and forthwith deliver said Aircraft, including their respective engine and airframe maintenance, operation and flight logs, to the purchaser or purchasers at that sale;

F.    and to such other and further relief this court may deem proper and just.

## COUNT II

LIEN FORECLOSURE ACTION
AIRCRAFT GUARANTY CORPORATION
Aircraft Tail Number N814SG

57.    SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

58.    This is an action to foreclose liens upon Aircraft for labor, material or services to the Aircraft pursuant to Fla. Stat. § 329.51 and Fla. Stat. § 713.58.

59.    SKYJET ELITE has filed and recorded its Claims of Liens as follows:

| | |
|---|---|
| N814SG FAA: | Conveyance No.: LE014836 |
| FLORIDA: | Instr. 117141897 – Broward County |
| Amount: | $106,639.52 |

60.    Pursuant to Fla. Stat. §. §329.51, SKYJET ELITE has a fully enforceable perfected Aircraft Claim of Lien upon the Aircraft, superior to all other right, claim or interest or title of the owner, or other party by, through or under them.

61.    The right, title, and interest of any other person or entity, if any, to Aircraft encumbered by SKYJET ELITE is inferior to its liens.

-15-

62.     Pursuant to Fla. Stat. § 329.51, SKYJET ELITE has perfected statutory liens upon the Aircraft superior to all right, claim, interest or title of any other party.

63.     SKYJET ELITE has and is entitled to enforce its Claims of Lien under the Lien Law for all sums remaining owing by AIRCRAFT GUARANTY CORPORATION.

64.     By reason of the foregoing, SKYJET ELITE required to employ its attorneys to attempt to effect collection of the indebtedness due SKYJET ELITE under the terms of its Management Agreement, to represent it to institute and prosecute this foreclosure action, and for such employment SKYJET ELITE has agreed and become obligated to pay them a reasonable fee.  SKYJET ELITE is entitled to a 15% attorney's fee in accordance with the provisions of Fla. Stat. § 85.011.

65.     This action has been timely filed within one year of the recording of SKYJET ELITE's recording of  its Aircraft Claims of Lien.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  That an accounting be taken of all sums due SKYJET ELITE for the unpaid labor, material or services, interest, costs, and attorney's fees which have been incurred or which will be incurred by SKYJET ELITE during the pendency of this suit, and that all sums found to be due to SKYJET ELITE be decreed to be due and owing to SKYJET ELITE and to be a lien in favor of SKYJET ELITE upon the respective aforesaid Aircraft, prior, paramount, and superior to all rights, title, interests, and claims of any party;

-16-

C. That SKYJET ELITE be entitled to take immediate possession of the aforesaid Aircraft, including their respective engine and airframe maintenance, operation and flight logs;

D. That this Court decree that in default of the payments of all sums found to be due to SKYJET ELITE within the time set by this Court, that the Aircraft, including their respective engine and airframe maintenance, operation and flight logs, be sold at public or private sale, as provided by law, and by and under the direction of this Court and that there be paid out of the proceeds of said sale the costs and expenses of this suit, including SKYJET ELITE'S attorney's fees, and that the remainder of said proceeds be applied to payment of the unpaid fuel charges and interest found to be due to SKYJET ELITE;

E. That this Court further decree that upon sale being made, all parties to this action and all parties claiming by, through or under said defendants since the filing of the Claims of Lien in Miami-Dade County, Florida be forever barred and foreclosed of any right, title, interest and lien in, to or upon the aforesaid Aircraft, including their respective engine and airframe maintenance, operation and flight logs, that all parties in possession thereof surrender and forthwith deliver said Aircraft, including their respective engine and airframe maintenance, operation and flight logs, to the purchaser or purchasers at that sale;

-17-

F.   and to such other and further relief this court may deem proper and just.

## COUNT III

BREACH OF CONTRACT
AIRCRAFT GUARANTY CORPORATION

66.      SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

67.      SKYJET ELITE entered into the Management Agreement with ACG upon which ACG is responsible for payment of certain costs, including but not limited to, maintenance, storage, and outside professional services.

68.      ACG is in breach of the Management Agreement by failing to pay the amount owed to SKYJET ELITE.

69.      SKYJET ELITE has suffered damages as a result of this breach.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against Aircraft Guaranty Corporation, awarding monetary damages against Aircraft Guaranty Corporation, plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

-18-

**COUNT IV**

BREACH OF CONTRACT
LU INVESTMENTS, INC.

70.     SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

71.     SKYJET ELITE entered into the Management Agreement with ACG upon which ACG is responsible for payment of certain costs, including but not limited to, maintenance, storage, and outside professional services.

72.     LU INVESTMENTS took over the Management Agreement from ACG.

73.     LU INVESTMENTS is in breach of the Management Agreement by failing to pay the amount owed to SKYJET ELITE.

74.     SKYJET ELITE has suffered damages as a result of this breach.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against LU INVESTMENTS, INC., awarding monetary damages against LU INVESTMENTS, INC., plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

-19-

## COUNT V

### BREACH OF CONTRACT
### LIM UNG

75.     SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

76.     SKYJET ELITE entered into the Management Agreement signed by LIM UNG, and is responsible for payment of certain costs, including but not limited to, maintenance, storage, and outside professional services.

77.     LIM UNG, misrepresented himself as the owner of the Aircraft for purposes of executing the Management Agreement, and is personally responsible for the payment due under the Management Agreement as the signatory.

78.     LIM UNG took over the payment due under the Management Agreement when he signed a 8050-2 Bill of Sale on the Aircraft transferring title from AGC to Mr. Lim Ung – pursuant to a Voting Trust.

79.     LIM UNG is in breach of the Management Agreement by failing to pay the amount owed to SKYJET ELITE.

80.     SKYJET ELITE has suffered damages as a result of this breach.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against LIM UNG, awarding monetary damages against LIM UNG, plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

-20-

**COUNT VI**

BREACH OF IMPLIED/CONSTRUCTIVE CONTRACT OR UNJUST ENRICHMENT
AIRCRAFT GUARANTY CORPORATION

81.     SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

82.     SKYJET ELITE paid the costs for labor, storage, professional services, and material or services on or relating to the Aircraft from July 2020 through the date of filing this action and beyond, which is a benefit to AGC.

83.     AGC had knowledge of SKYJET ELITE paying for these costs and accepted these benefits without paying SKYJET ELITE the amount owed.

84.     SKYJET ELITE has suffered damages as a result of this breach.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against Aircraft Guaranty Corporation, awarding monetary damages against Aircraft Guaranty Corporation, plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

**COUNT VII**

BREACH OF IMPLIED/CONSTRUCTIVE CONTRACT OR UNJUST ENRICHMENT
LU INVESTMENTS, INC.

85.     SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

-21-

86.     SKYJET ELITE paid the costs for labor, storage, professional services, and material or services on or relating to the Aircraft from July 2020 through the date of filing this action and beyond, which is a benefit to LU INVESTMENTS.

87.     LU INVESTMENTS had knowledge of SKYJET ELITE paying for these costs and accepted these benefits without paying SKYJET ELITE the amount owed.

88.     SKYJET ELITE has suffered damages as a result of this breach.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against LU INVESTMENTS, INC., awarding monetary damages against LU INVESTMENTS, INC., plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

## COUNT VIII

BREACH OF IMPLIED/CONSTRUCTIVE CONTRACT OR UNJUST ENRICHMENT
LIM UNG

89.     SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

90.     SKYJET ELITE paid the costs for labor, storage, professional services, and material or services on or relating to the Aircraft from July 2020 through the date of filing this action and beyond, which is a benefit to LIM UNG.

91.     LIM UNG's agent repeated to SKYJET ELITE that LIM UNG would pay for SKYJET ELITE's services and to continue to operate the Aircraft.

-22-

92.     LIM UNG had knowledge of SKYJET ELITE paying for these costs and accepted these benefits without paying SKYJET ELITE the amount owed.

93.     SKYJET ELITE has suffered damages as a result of this breach.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against LIM UNG, awarding monetary damages against LIM UNG, plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

**COUNT IX**

FRAUDULENT MISREPRESENTATION
<u>LIM UNG</u>

94.     SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

95.     IAN ROBERTS, as agent for LIM UNG, made the following material statement in an audio message on Whatsup on February 18, 2021:

i.   At 10:19 a.m.: [Lim Ung]'s got to pay for the maintenance anyway because when you sell the plane its I guess its up to seller to put in airworthy conditions…

ii.  At 11:36 a.m.: …the bills gonna be paid regardless so [Lim Ung] will pay them it it's just I want to keep a positive I would like to keep the plane flying for a few months if this [mechanical issue] is not so bad

-23-

and play with you is not so bad keep the plane flying make sense to try

and sell it on the market for sale try and get some revenue coming in…

96.     As LIM UNG's agent, Ian Roberts knew that Lim Ung had no intentions of paying SKYJET ELITE and that this statement was false and knew it would induce SKYJET ELITE to act.

97.     LIM UNG knew of these statements made by Ian Roberts and knew the statements to be false. LIM UNG knew these statements would induce SKYJET ELITE to act.

98.     In reliance upon this statement assuring SKYJET ELITE that LIM UNG would pay SKYJET ELITE and the Aircraft needs to be flying for a few months to bring in revenue, SKYJET ELITE paid the costs for labor, maintenance, storage, professional services, and material or services on or relating to the Aircraft and continued to operate the Aircraft.

99.     SKYJET ELITE has not been paid by LIM UNG for these expenses and continues to have suffered damages.

100.     LIM UNG obtained the benefit of SKYJET ELITE paying for labor, maintenance, storage, professional services, and material or services on or relating to the Aircraft.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against LIM UNG, awarding monetary damages against LIM

-24-

UNG, plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

## COUNT X

NEGLIGENT MISREPRESENTATION
LIM UNG

101.    SKYJET ELITE reaffirms and re-alleges the allegations of numbered paragraphs 1 through 47 above as if fully set forth herein.

102.    IAN ROBERTS, as agent for LIM UNG, made the following material statement in an audio message on Whatsup on February 18, 2021:

      i.   At 10:19 a.m.: [Lim Ung]'s got to pay for the maintenance anyway because when you sell the plane its I guess its up to seller to put in airworthy conditions…

      ii.   At 11:36 a.m.: …the bills gonna be paid regardless so [Lim Ung] will pay them it it's just I want to keep a positive I would like to keep the plane flying for a few months if this [mechanical issue] is not so bad and play with you is not so bad keep the plane flying make sense to try and sell it on the market for sale try and get some revenue coming in…

103.    As LIM UNG's agent, Ian Roberts knew that Lim Ung had no intentions of paying SKYJET ELITE and that this statement was false and knew it would induce SKYJET ELITE to act.

104.    LIM UNG knew of these statements made by Ian Roberts. LIM UNG knew these statements would induce SKYJET ELITE to act.

MARK A SCHNEIDER, P.A.
1100 LEE WAGENER BLVD. SUITE 321 FT LAUDERDALE, FL 33315  (954) 661-6275

105.     In reliance upon this statements assuring SKYJET ELITE that LIM UNG would pay SKYJET ELITE and the Aircraft needs to be flying for a few months to bring in revenue, SKYJET ELITE paid the costs for labor, maintenance, storage, professional services, and material or services on or relating to the Aircraft and continued to operate the Aircraft.

106.     SKYJET ELITE has not been paid by LIM UNG for these expenses and continues to have suffered damages.

107.     LIM UNG obtained the benefit of SKYJET ELITE paying for labor, maintenance, storage, professional services, and material or services on or relating to the Aircraft.

**WHEREFORE**, SKYJET ELITE, INC. demands:

A.  That this Court takes jurisdiction of the subject matter and the parties hereto;

B.  Judgment against LIM UNG, awarding monetary damages against LIM UNG, plus to the extent allowed by law, pre-judgement and post judgement interest, costs and any other relief this Court deems just and proper.

**JURY DEMAND**

SKYJET ELITE, INC, hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

-26-

*Counsel for SKYJET ELITE, CORP.*

Mark A. Schneider, Esq
MARK A. SCHNEIDER, P.A.
Fla. Bar No.: 0857696
1100 Lee Wagener Blvd.
Suite 321
Ft. Lauderdale, FL 33315
t.954.661.6275
masv35@aol.com
fouga101@aol.com
By:  /s/Mark A. Schneider

-27-